Copy
RECEIVED
JUN 07 2013
JOHN P. HEHMAN, CLERK
CINCINNATI, OHIO

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO
JOHN W. PECK FEDERAL OFFICE BUILDING
550 MAIN STREET 10TH FLOOR
CINCINNATI, OHIO 45202

LISA CHAMBERS
854 Old US 52 *
New Richmond, Ohio 45157

    Plaintiff,

-v-

SUNWEST MORTGAGE COMPANY
18303 Gridley Road *
Cerritos, California 90703

PAVAN ARGAWAL
18303 Gridley Road
Cerritos, California 90703

KENNETH CRIDER *
3200 West End Avenue, Ste 500
Nashville, Tennessee 37203

TODD VALLAND
7010 E. Chauncey Suite 130
Phoenix, AZ 85054

    Defendants.

Case No.: 1:13 CV 399

Judge: SPIEGEL
M.J. LITKOVITZ

COMPLAINT AND
JURY DEMAND

***************************************************************************

NOW COMES Plaintiff Lisa Chambers Pro Se' and for her complaint, through undersigned counsel, against Defendants SunWest Mortgage Company Inc., Pavan Argawal and Kenneth Crider and states the following:

1

## I. PRELIMINARY STATEMENT

1. This is a civil rights action brought by Lisa Chambers arising out of her former employment with SunWest Mortgage Company Inc.. Specifically, Ms. Chambers alleges that Defendants discriminated against her based upon her gender and terminated her in retaliation for making the claim that she was being discriminated against based on her gender.

2. Ms. Chambers seeks compensatory damages for the economic and non-economic damages that she has suffered as a proximate result of Defendants' actions. She also seeks punitive damages, and costs and expenses, which would include reasonable attorney fees.

## II. JURISDICTION AND VENUE

3. This court has jurisdiction of this action pursuant to Title VII of the Civil Rights Act of 1964 as well as jurisdiction of this action pursuant to EEOC's regulations published annually in Title 29 of the Code of Federal Regulations (CFR). Under Title VII, the ADA, and the ADEA, it is illegal to discriminate in any aspect of employment, including:

- hiring and firing;
- compensation, assignment, or classification of employees;
- transfer, promotion, layoff, or recall;
- job advertisements;
- recruitment;
- testing;
- use of company facilities;
- training and apprenticeship programs;
- fringe benefits;
- pay, retirement plans, and disability leave; or
- other terms and conditions of employment.

Discriminatory practices under these laws also include:

- harassment on the basis of race, color, religion, sex, national origin, disability, or age;
- retaliation against an individual for filing a charge of discrimination, participating in an investigation, or opposing discriminatory practices;
- employment decisions based on stereotypes or assumptions about the abilities, traits, or performance of individuals of a certain sex, race, age, religion, or ethnic group, or individuals with disabilities; and
- denying employment opportunities to a person because of marriage to, or association with, an individual of a particular race, religion, national origin, or an individual with a disability. Title VII also prohibits discrimination because of participation in schools or places of worship associated with a particular racial, ethnic, or religious group.

4. Venue with this Court is appropriate because most if not all of the actions complained of occurred in Clermont County, Ohio.

### III. PARTIES

5. Plaintiff Lisa Chambers is an Ohio citizen and at all times herein mentioned herein was a resident of Clermont County, Ohio.

6. Defendant SunWest Mortgage Company ("SunWest") is a corporation conducting business throughout the state of Ohio. SunWest is an employer as that term is defined in ORC §4112.01, Title 29 of the Code of Federal Regulations (CFR).
and Title VII

7. Defendant Pavan Argawal is owner of SunWest and is an employer as that term is defined in ORC §4112.01, Title 29 of the Code of Federal Regulations (CFR). and Title VII of the Civil Rights Act of 1964. Mr. Argawal exercised supervisory powers over Ms. Chambers at all times relevant to this Complaint.

8. Defendant Kenneth Crider is Southeast Area Sales Manager with SunWest and is an

3

employee as that term is defined I ORC §4112.01, Title 29 of the Code of Federal Regulations (CFR). I ORC §4112.01, and Title VII of the Civil Rights Act of 1964.. Mr.Crider exercised direct supervisory powers over Ms. Chambers at all times relevant to this Complaint. Mr. Valland is National Retail VP of Operations of SunWest and is an employer as that term is defined in I ORC §4112.01, Title 29 of the Code of Federal Regulations (CFR), and Title VII of the Civil Rights Act of 1964. Mr. Valland exercised direct supervisory powers over Ms. Chambers at all times relevant to this complaint.

## IV. STATEMENT OF THE CLAIMS

8. SunWest recruited and eventually hired Ms. Chambers away from her previous employer in January 2012 as an Area Sales Manager and Regional Branch Manager. Ms. Chambers came to the company with certain expectations and assurances including, but not limited to acquiring a physical office space to conduct company business, certain training opportunities and intense marketing support.

9. Soon after Ms. Chambers attended training for all SunWest national managers near the corporate offices in California. At that training she learned that she was the only female in her position at SunWest. During a mandatory Corporate meeting held for all managers in Cerritos California February, 2012 Crider, Aragwal, Valland and Other SunWest Employees became aware of Ms. Chambers possible past EEOC actions taken against a former employer, including her refusal to work outside of strict Government Compliance; at which time Ms. Chambers became verbally harassed by Crider, Valland and other SunWest Employees including but not limited to SunWest Employees daily refusal to provide Ms. Chambers equal treatment in every area of work related support as her male peers, forcing Ms. Chambers to endure daily verbal harassment, threats, including but not limited to refusal of all SunWest Corporate internal support in an attempt to force to her resign her position knowing she was not only "disliked and unwanted" by Valland and other SunWest employees but Ms. Chambers became the "personal object of Valland's personal humor and entertainment" due to Valland, Crider, Aragwal and other SunWest Employees ongoing sexually and intellectually demoralizing attacks, harassment, threats, and support refusal for each and every request made by Ms. Chambers to SunWest Employees for

4

internal corporate support., including but not limited to email support requests, telephone support request, pricing and marketing support requests. Ms. Chambers was forced to perform without receiving the same support of her male peers and terrified of the verbally threats made to her by Crider, Valland, and other SunWest Employees if she refused to immediately cease from requesting equal treatment.

Under Title VII It is also illegal to harass someone because they have complained about discrimination, filed a charge of discrimination, or participated in an employment discrimination investigation or lawsuit:

> Harassment can take the form of slurs, graffiti, offensive or derogatory comments, or other verbal or physical conduct. Sexual harassment (including unwelcome sexual advances, requests for sexual favors, and other conduct of a sexual nature) is also unlawful. Although the law does not prohibit simple teasing, offhand comments, or isolated incidents that are not very serious, harassment is illegal if it is so frequent or severe that it creates a hostile or offensive work environment or if it results in an adverse employment decision (such as the victim being fired or demoted).
>
> The harasser can be the victim's supervisor, a supervisor in another area, a co-worker, or someone who is not an employee of the employer, such as a client or customer.

10. Upon returning home and proceeding with her employment efforts she began inquiring about the assurances that had been made to her upon her hiring and at the training. Key among her concerns was the fact that she had to conduct business from her home (using her residence as an FHA listing) exposing her to personal liability.

11. Despite repeated and numerous requests to Defendants, Ms. Chambers was never provided with office space to conduct business and was warned to quit inquiring about the matter, though other managers that attended the training were in fact working from SunWest office space and Crider, Valland, Aragwal, and other SunWest employees admit to providing pending "New

Management Hires" with offices as part of their onboarding agreements thus denying Ms. Chambers guarantee by Crider, Valland, Aragwal and other SunWest employees to receive a professional office lease to conduct SunWest business prior to her onboarding only then to receive continued refusal to honor promised lease in addition to threatening Ms. Chambers with the consequences of future actions to be taken against her if she did not stop requesting promised professional lease.

12. Ms Chambers inquired about several other matters necessary for her to effectively perform in her position, including pricing assistance, marketing assistance and materials and technical support, professional real estate client marketing agreements, promised new construction/end loan programs, professional organization membership affiliations and dues, travel expenses and reimbursement, including but not limited to those stated. These inquiries were made directly to Defendants Crider, Aragwal, Valland and other SunWest employees. Noting that she was a woman and had other "tools" at her disposal, all her requests were denied and/or ignored.

13. Despite not receiving internal support, Ms. Chambers was still able to secure potential mortgage business from various clients and several client quotes. Ms. Chambers was required to submit those quotes to SunWest's in-house support staff because she was not provided with the proper access "sunsoft" software used by SunWest Employees for proper pricing and input for accounts until just prior to her retaliatory termination . Those client quotes were mishandled, costing Ms. Chambers over one million dollars in potential income. In addition, Ms. Chambers was discouraged from securing certain and additional accounts and told to "stay in a woman's place" and discuss nothing but retail with clientele.

14. Ms. Chambers was denied several other business opportunities by SunWest, Crider, Valland and others even after securing enforceable agreements with clients due to failures by Defendants to provide the necessary support, approval, and/or tools to move forward. These failures seemed to be unique to Ms. Chambers and were in direct conflict with assertions made at her time of hire.

15. From her time of hire Ms. Chambers watched her male peers (new managers) receive many if not all of the tools necessary to succeed in their respective positions while she continued to be

denied certain tools, harassed, rejected and reprimanded for making simple requests for the things necessary to effectively perform her job.

16. In mid-March 2012 Ms. Chambers inexplicably began receiving internal correspondence noting that her job performance was lacking and she would need to improve her production although she had submitted client application options n excess of $1.5 million dollars during the months of January -March 2012, to Crider for "sunsoft input" which Crider instead placed under his personal sunsoft employee account number crediting his personal production account with the volume Ms. Chambers generated clients rather than properly placing them within the "sunsoft system" under Ms. Chambers employee number giving her the proper credit for those clients due to her inability to access the "Sunsoft System". Crider, Valland, and other SunWest employees also refused a complete, signed refinance loan application Ms. Chambers input into the SunSoft System for a refinance client in the amount of $300,000.00 in the month of March once again refusing to credit Ms. Chambers personal production. In addition Crider, Valland, and other Sunwest employee's refused to sign Ms. Chambers new employee's "Schedule 1A" (new employee compensation contract) although Crider verbally interviewed Ms. Chambers new hire employees via telephone conference calls, provided Ms. Chambers and her Regional Area/Branch New Hire Employees during said conference calls promising each new employee a position as "loan officer" with Sunwest Mortgage in addition to tuition and licensing reimbursements upon onboarding. Each new hire had fully completed State required training educational requirements as demanded by Crider and had already obtained and/or was in the process of obtaining their State of Ohio licensing through the Ohio Department of Commerce pending available testing schedules. These actions destroyed Ms. Chambers professional credibility within the Regions Mortgage Banking Profession.

17. Concerned that she was not, and had not been treated fairly, on or around March 27, 2012 Ms. Chambers contacted Mr. Argawal, Mr. Crider, Mr. Valland, human resources and other staff noting her concerns and again requesting certain supports and that she not be forced to use her home as FHA office.

7

18. Three days after those conversations took place, Ms. Chambers received official notice that her (home) office was being closed and her position with the company was being terminated. Ms. Chambers was later able to ascertain that the decision to terminate her position was made immediately after her phone call with Mr. Crider on March 27, 2012. Ms. Chambers verbally expressed her concerns to Crider on March 27, 2012. The corporate decision to terminate Ms. Chambers was made and signed off less than 24 hours after her complaint on March 28, 2013 yet Ms. Chambers did not receive notice of her termination until March 30, 2012 which came via telephone call that date at 4:30 pm EST proving beyond a reasonable doubt actions taken against Ms. Chambers was nothing less than malicious retaliatory actions.

19. The aforementioned actions of Defendants in terminating Ms. Chambers' employment in the manner and for the reasons previously described were committed maliciously on account of her sex/gender and/or to punish her for having protested SunWest's, Crider's, Valland's and other SunWest employee discriminatory acts.

20. As a direct and proximate result of Defendants' actions in terminating Ms. Chambers for the reasons previously described, Ms. Chambers has suffered a loss of past and future income, including salary, commissions, bonuses and benefits, emotional distress and damage to her professional relationships and professional credibility and reputation Ms. Chambers spent decades establishing within the Ohio Region Mortgage Banking, Real Estate, and Residential Construction Clientele.

## FIRST CLAIM FOR RELIEF
### (Discrimination)

21. Plaintiff incorporates in this Claim for Relief Paragraphs 1-15 provided above herein the same as though fully set out.

22. Defendants' treatment and termination of Ms. Chambers based upon her gender constitutes discrimination in violation of Title I of the American with Disabilities Act of 1990 for retaliating against an employee because the person complained about discrimination, filed a charge of

8

discrimination, or participated in an employment discrimination investigation or lawsuit. Title VII of the Civil Rights Act of 1964 law making it illegal to discriminate against someone on the basis of race, color, religion, national origin, or sex. The law also makes it illegal to retaliate against a person because the person complained about discrimination, filed a charge of discrimination, or participated in an employment discrimination investigation or lawsuit., The Equal Pay Act of 1963 making it illegal to pay different wages to men and women if they perform equal work in the same workplace. The law also makes it illegal to retaliate against a person because the person complained about discrimination, filed a charge of discrimination, or participated in an employment discrimination investigation or lawsuit., Sections 102 and 103 of the Civil Rights Act of 1991 law amending Title VII and the ADA to permit jury trials and compensatory and punitive damage awards in intentional discrimination cases., ORC §4112.02, et seq.,  legal action pursuant to EEOC's regulations published annually in Title 29 of the Code of Federal Regulations (CFR). and Title VII of the Civil Rights Act of 1964.

## SECOND CLAIM OF RELIEF
### (Retaliation)

23. Plaintiff incorporates in this Claim for Relief Paragraphs 1-17 provided above herein the same as though fully set out.

24. Defendants' act of terminating Ms. Chambers because she protested discriminatory treatment constitutes retaliation in violation of ORC §4112.02, et seq., legal action pursuant to EEOC's regulations published annually in Title 29 of the Code of Federal Regulations (CFR). and Title VII of the Civil Rights Act of 1964.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lisa Chambers sues and demands judgment against Defendants SunWest Mortgage Company Inc., Pavan Argawal, and Kenneth Crider jointly and severally, for

general compensatory damages for Ms. Chambers' economic injuries, compensatory damages for Ms. Chambers' noneconomic injuries, including pain and suffering and damage to her professional reputation and judgment for special and punitive damages, all in an amount to be determined at trial but totaling over $15, 000, plus an award of the costs of this action including any litigation expenses, and attorney's fees and for such other legal and equitable relief that the Court deems just and proper under the circumstances.

Respectfully submitted,

_____
Lisa M. Chambers
854 Old US Highway 52
New Richmond, Ohio 45157
513.607.4107 Telephone
LifeInChrist@Fuse.Net
Email for Plaintiff Lisa Chambers

**JURY DEMAND**

Ms. Chambers demands that all issues of fact in the foregoing Complaint be tried before a jury.

## CERTIFICATE OF SERVICE

The undersigned hereby certify that a true copy of the foregoing PLAINTIFFS COMPLAINT and JURY DEMAND was sent on this 7th day of June, 2013 via USPS postage to:

SUNWEST MORTGAGE COMPANY

18303 Gridley Road *

Cerritos, California 90703


PAVAN ARGAWAL

18303 Gridley Road

Cerritos, California 90703


KENNETH CRIDER

3200 West End Avenue, Ste 500

Nashville, Tennessee 37203


TODD VALLAND
7010 E. Chauncey Suite 130
Phoenix, AZ 85054

_____

Lisa M. Chambers PLAINTIFF

854 Old US Hwy 52

New Richmond, Ohio 45157